Our last matter for argument today is that of Marmon Coal Company versus the Director of the Office of Workers Compensation Programs, Mr. Solomon. Yes, good morning. May it please the Court, I'm Mark Solomons. I represent the coal company in this federal black lung case. What the Labor Department wants you to do here is to retroactively reverse a prior final decision, notwithstanding a unanimous Supreme Court decision holding that ordinary principles of res judicata apply in black lung claims. And the Department doesn't have any cases, any support, any precedent, or any textual language to support this outcome. Doesn't the statute purport to cover this? I mean, this is aside from the res judicata principle. But doesn't Congress purport to allow this claim to go forward? Whether it does or not, it may be subject to res judicata. In the Affordable Health Care Act? Yes. Well, Your Honor, in the health care bill, all legislation is prospective. It is strongly presumed to be prospective. All legislation is written in the present tense, including this legislation. Now, what the Department is saying is that the words of this legislation, somehow I don't see it at all, is different. This is not prospective wording. This is wording that would go back and reopen a previously adjudicated and finally adjudicated claim. Let me say one more thing on that account, is that we're not dealing just with that provision. And I don't see how that provision does not, as the Supreme Court always requires, it does not expressly provide that prior adjudications are affected, it does not expressly abrogate principles of res judicata, and it does not expressly apply itself retroactively. Well, but before we get to your argument on res judicata, we really need to deal with the statute itself, with 1556, 1556C, I think it is, and the ordinary meaning of claims, right? Well, I mean, the ordinary meaning of claims is that there's a cause of action and it constitutes a claim. They define it in their regulations. I mean, that is what the word claim always means in this statute. It does not mean pieces of paper. The statute says claims. It doesn't distinguish between initial claims and subsequent claims. Well, no statute, and that's why we have Supreme Court precedent that applies rules of construction in this context. The statute, like all statutes, is assumed, presumed to be prospective in its meaning. There's nothing, there is no word in there that would say that claims meet claims. No claim or claims is devoid by itself of any kind of tense, right? Well, Your Honor, you know, I think this is a word game. It's a noun. It's not a verb. I'm sorry. I think this is the Department of Labor's word game. All statutes read that way. The principle that the Department is suggesting here is that every time Congress amends a statute, that everybody lost under the old law can come back and redo it. That's their position, essentially. And that is why we have principles of construction like those that we've cited to you, involving the strong presumption that is prospective only and that requires specific language that would do something retroactively. And there isn't any. So you don't think the statute, by its terms, has retroactivity and back to January 1st of 2005? No, it does that. It specifically says that. It doesn't say that it reopens previously denied claims. And we're looking, I think the thing that we need, and let me say that there's, in order to get where they want you to get, you need to amend other provisions of this law. You have to amend two provisions of the Longshore Act, which apply verbatim in black lung claims. It's 33 U.S.C. 921A and 30 U.S.C. 921E. And those provisions define finality and define what finality means for purposes of both longshore and black lung claims. And what they say is that you cannot abrogate it. And the Supreme Court has said you cannot abrogate it. But here you have statutory provisions that deny the ability to abrogate it without express language saying we are affecting those old claims. The Supreme Court, you know, the immigration context is a good paradigm here. Where you have, and these cases are all cited in here, where you have the sexual predator provisions where Congress, in the statute, said we don't care if somebody had gotten off from deportation in the past. We want them to be deported now. But, and that's in the LVR Villas case. But then we have the Vartelis case, which is the same immigration statute where the language is unclear. The language is like our language here. It doesn't say anything about old claims. And the Supreme Court said that you cannot assume retroactivity in that context. Now, the, you know, in addition to all of this statutory, all of this breaking of rules of construction, which is what they're asking you to do, because these rules are inarguable, it seems to me, in addition to amending the Longshore Act and the principles of finality, in addition to overruling, in a sense, the Supreme Court's decision, unanimously holding in Pitts and Kohl Group, that principles of finality, res judicata applies in black-owned claims. They have, you know, several other arguments that. Sure, they apply. But res judicata would not apply if you simply construe claims as having an ordinary meaning shorn of a suggestion that it applies only to initial claims or subsequent claims. I believe. If you believe that the plain language, the ordinary meaning of claims, includes both initial claims, subsequent claims, and that therefore Congress created effectively a new remedy in the Affordable Health Care Act, then there's no need to apply res judicata principles. Well, Your Honor, that's against every rule of construction I know, and they haven't cited any rule of construction. To the contrary, they say that's plain language. Plain language does not mean silence. The plain language requires, and all of the cases say this, the plain language, if you're going to do something like that, you're going to abrogate very powerful principles of jurisprudence, like res judicata and retroactivity, then you're going to have to have more than this. And they have no case. There's no case that says otherwise. No case. The Supreme Court has addressed these issues many times. Mr. Solomons, one of the things that I wonder here, Mrs. Eckman, who is the claimant here, what is the claim? What claim is she making? Well, that she's entitled to benefits because her husband was totally disabled at the time of his death. Okay. And she's asking for benefits as a survived spouse, correct? Right. What was the claim she made that was previously disallowed? Well, she was claiming that her husband died due to pneumoconiosis, and she was entitled benefits for that. But at that time it was denied because the medical evidence didn't show that his death came from black lung. Correct. Correct. Okay. So is there any change in the claim? No. The claim, I mean, they've made the argument, and I know how hard it is to argue black lung claims, and the thing is that they've made an argument here that this is a new cause of action. There is no law anyplace that would say that. It is a new cause of action. It is not, sir. I'm sorry. Don't interrupt me. Yeah, I'm sorry. It is not a new cause of action if you assume that the new claim does not include one of the elements that needed to be proven in the old claim, is it? Your Honor, there is a lot of jurisprudence on what constitutes a new cause of action. The cause of action does not relate to the law. Your own decisions in the circuit, but certainly the Supreme Court decisions say this. The cause of action relates to the relationship between parties and to the circumstances that led to a claim in the first place, regardless of how the law defined it. Here you have circumstances, and that's what they all say. The law does not define the cause of action. There are three kinds of situations in the Supreme Court law. We've cited all these cases. Nothing to the contrary, by the way. They cite nothing. God is making this up. But the first kind of case is one where new events occur after the prior adjudication. That's Lawler, Supreme Court decision. The second kind is where Congress expressly, with plain language, says, we are going back and we're going to affect what happened in that prior adjudication. That's like the sexual predator case. Mr. Solomon, let me try this. Let's see if we can agree on this. Is it true that in her previous claim, in Mrs. Eckman's previous claim, the board found she was a surviving spouse, that she was dependent on Mr. Eckman, and that Mr. Eckman had been totally disabled due to black lung disease, but that black lung disease did not cause his death? Yes. Can we agree that that was what was involved in the previous one? That's correct. All right. In the subsequent claim, isn't it true that the first three findings entitle her to automatic survivor's benefits, and that the last finding, that is that the black lung disease didn't cause the claim, becomes irrelevant for purposes of the claim that's been created, the right to a claim that's been created under the Affordable Health Care Act? Your Honor, there isn't any law that supports the definition of a cause of action in that way. No case that I have found, no case the government has cited. There aren't any cases at all under those provisions of the Affordable Health Care Act at this stage, are there? That's new, but there are other cases. There are other cases, lots of them, that define, including cases in this court, that define the circumstances that make a cause of action. And a change in the law, just like let's say they changed the statute of limitations and the person was barred the first time because they didn't make it, and then they reopened the statute of limitations. That's not going to apply retroactively. Let me ask you a question. And this is no different. If the first claim never existed, would she be able to recover under the current statute? Well, Your Honor, a lot of things might have been different. First of all, I can't answer it simply, I can't answer it that simply, because the company is making a judgment. The company makes a judgment on what they're going to do with this man's claim, and they made a judgment in this case that they were going to accept this claim, probably because they may have known that he was dying to do something else. They didn't feel that they were exposed on a survivor's claim, and so they didn't feel like there was a need for them to take that into account. I don't know what kind of a decision they would have made. I wasn't involved in that at that level with the company. Let's say they never filed a claim, and they filed a claim today. Would they be able to recover? Well, yeah, they would. Okay. But that doesn't deal with the questions of finality of the other claims. I mean, that sort of approach would apply to any law Congress ever enacted, any law. And Congress didn't mean for sure to say that in these kinds of cases that they were going to get rid of race judicata, they were going to get rid of presumption against retroactivity. Congress knows how to write statutes. They know what they're doing. And, you know, although I think later legislative history isn't worth anything, in the B&G construction case, this court credited later legislative history to some degree. The fact of the matter is if you apply principles of construction to that later legislative history, it excludes her claim. It excludes it because under the principle of astutum generis, the list that they have there does not include her. As a matter of fact, it clearly implies she is not included. So there's nothing, I think, that I read. Thank you. Did you reserve for rebuttals to someone? I think I wanted to. I'm not sure if I remember to. I reserved to. Okay. Thank you very much. Mr. Joiner. Good morning, Your Honors. May it please the Court, my name is Barry Joiner, and I represent the Director of the Office of Workers' Compensation Programs. The issue before the Court today is whether or not Section 1556 of the Affordable Care Act, which reinstated automatic entitlement for certain survivors, applies to survivors who are filing subsequent claims. The language of that provision is clear and unqualified. It applies to any claim that complies with the time limits of the statute, that is, any claim that was filed from 2005 onwards and that was pending on or after the enactment date of the Affordable Care Act. This Court has looked at that language. The Fourth Circuit has in the Stacey case. The Sixth Circuit has in the Groves case. And they've all found that the language is clear, plain, unqualified. It makes no distinction between minors' claims and survivors' claims. It makes no distinction between original claims and subsequent claims. And that's the way that claims, the term claims are used throughout the statute and the regulations and the decisions of the various courts. A claim is an assertion of entitlement to benefits. And the statute applies to any such claim. Marmon Cole makes two basic arguments as to why, despite the plain language of the statute, that Mrs. Eckman's claim should be barred. First, they bring up the issue of finality. There is no question that Mrs. Eckman's first claim was finally denied. It was conclusively determined in that claim that her husband did not die of pneumoconiosis and there is nobody here today arguing that was true. Nor did she appeal. Nor did she appeal. You know, that case is over. That's a dead letter, right? That is over and done with. She cannot now come forward, and she does not, and neither do we, to argue that her husband died due to pneumoconiosis. Rather, but the fact that that claim was final does not determine whether or not her second claim can go forward as a subsequent claim, whether or not it is somehow barred. Now, that gets to the second argument that is made by Marmon Cole, which is that res judicata bars that claim. I think it's a good point to step back and remember exactly what res judicata is. It's not some amorphous, overarching concept that affects each and every case that comes before a court. Res judicata is an affirmative defense, the party asserting it has to prove three elements. First, that there was a final judgment and a prior action. Second, that it involved the same parties. And third, that it involved the same cause of actions. So one and two are met. One and two are certainly met here, but three is not. This is not the same cause of action. Now, what is a cause of action? I think there's both a factual and a legal dimension to what a cause of action is. Factually, you look at did the claim arise out of the same facts, the same evidence, the same documentation, as explained in this Court's decision in Duhaney. Transactional approach. A transactional approach. And clearly, this claim is different. In Mrs. Eckman's first claim, the key question was did her husband die due to pneumoconiosis? The resolution of that issue turned on evaluation and weighing of very detailed medical evidence addressing the cause of his death. Her second claim arises out of an entirely different fact. Let me stop you there, though. Her first claim still required that she be a surviving spouse. That is correct. Okay. That is correct. If she was not a surviving spouse, then she would not have been eligible. She would not have been eligible either pre-ACA or post-ACA. I understand. If she's not a surviving spouse, yeah, she's out. Okay. But her second claim, the key element that differentiates it from her first claim is that what she has to establish is that her husband received an award of benefits on a lifetime claim, which he did. So it's a different factual basis for the claim, and it's different evidence than you have in the first claim. She still needs to be the surviving spouse. She still needs to be the surviving spouse. There are certainly some elements in common. But I think the most important element here, the reason these claims are different, is clearly she was a surviving spouse then and she is a surviving spouse now. Basically, Congress made it easier for surviving spouses to collect benefits from. They did one element for another for a survivor's claim, and it certainly, as a practical matter, much easier to establish that your husband received a lifetime award than to prove what caused it. All right. Why is it wrong to say then that Congress, through the Affordable Care Act, revived Mrs. Eckman's claim as a surviving spouse? Because it's based on different facts, and it's based on a different legal theory. But if she wasn't a surviving spouse, she would have no claim. She would not have had a claim. But her claim was very specific. The only claim she could bring when she first applied for benefits was that she was entitled to benefits because her husband's death was due to pneumoconiosis. That was the only basis on which she could recover. Now Congress has created an alternative path that did not previously exist and says she can recover if her husband received a lifetime award. And that's another important element of what a cause of action is. The cause of action element of res judicata says that only those theories or bases of relief which were or could have been asserted in a prior action are barred in the second act. To put what you said just a moment ago in response to Judge Fisher, in other words, in the words that I used with Mr. Solomons, in seeking to apply principles of res judicata here, as you look at what I'll refer to as the elements of the two possible causes of action, the two possible claims here, the element that previously existed, that is that black lung disease caused the death, becomes irrelevant here. That's correct, Your Honor. I mean, this Court specifically held in B&G Construction that cause of death is now irrelevant. It doesn't matter whether Mr. Eckman died due to end-stage kidney disease and stroke, which is what appears he died of, or pneumoconiosis. What matters now is whether or not he received benefits on a lifetime claim. In this regard, I would also point out that the fact that Mrs. Eckman is pursuing a claim for monetary benefits now, as she was pursuing a claim for monetary benefits previously, really is not determinative. This Court in Duhaney made clear that the ultimate relief granted is not what determines a cause of action. The cause of action doesn't spring out of the relief. In Duhaney, the government sought in the first action to remove the alien. Second action, the government sought to remove the alien. The alien said, well, you know, removal is what constitutes the cause of action. And this Court said no. You look at the underlying facts. You don't look at what the ultimate relief is. And since Mrs. does not matter, then Mrs. Eckman is seeking the same sort of species of relief that she had sought originally. And I would point out in this regard that although it would be the same type of relief, it would not be the same extent of relief. Mrs. Eckman had received an award of benefits on her original claim. She would be entitled to benefits all the way back to the death of her husband. But here she gets it only back to when? Only back to the month after. It was modified by the director, I think, by. Yes, Your Honor. Dartmouth has a regulation specifically dealing with entitlement on subsequent claims. That's Section 725.309.D5. And that says that on a subsequent claim, entitlement cannot predate the month after the prior denial became final. So in this case, Mr. Eckman died in 2002. So in her original claim, if she had been awarded, her benefits could have gone back that far. Now, however, her benefits cannot predate 2005, which was when her first claim was denied. Can I ask you, your adversary devoted a lot of his argument to pointing out the statute that Congress could have said it was retroactive but did not. Do you have a response to that? Well, Your Honor, of course, in point of fact, the statute is partially retroactive. There's a specific provision there. But what I think his real argument is that Congress did not say that this statute creates a new cause of action for race judicata purposes. Well, Congress doesn't have to do that. The Supreme Court made clear in the Astoria financial case that Congress doesn't have to explicitly address the race judicata effect of a statute. That's something for the parties to establish whether there's a new cause of action and for the courts to ultimately decide. What about Marmon's finality argument? Well, their argument is that the prior claim was final. We completely agree the prior claim was final. That simply doesn't answer the question, though, about whether or not this is a new cause of action that can be pursued because we are not reopening that prior claim. We're not going back and looking at the factual findings that were made there. What is now being adjudicated are different facts. Your Honor, I'll be happy to try and answer any other questions you might have. Thank you very much. Thank you. Mr. Joyner. Mr. Solomons, we'll have you back in rebuttal. First of all, the Sixth Circuit has already rejected the Department of Labor's theory about how this only goes back to sometime before the ‑‑ sometime other than what the statute requires. The statute requires payment of benefits from the date of death. The Labor Department has this strange view in order to avoid the notion of res judicata because it doesn't affect the prior period of adjudication. Well, the Sixth Circuit's already rejected that in dots, and I cited that as additional authority. So clearly it is retroactive to there. Second of all, the Department of Labor's argument is a bunch of smoke and mirrors. There's no case that supports it. There is no principle of statutory construction that they have cited that supports it. They just made it up. We have focused on the principles of statutory construction which we think you should apply. These are powerful principles. These aren't just simple things like the presumption against retroactive rulemaking and the principles of res judicata. And the Labor Department, you know, they cite a story federal for just the opposite of what it says, which is that they cannot abrogate finality unless they say they're going to. We are abrogating finality, and they didn't do that here. I mean, if I can sum this up, there isn't any law that supports the propositions the Labor Department wants you to follow here. None. All of the law goes the other way. Even the law with respect to this later legislative history, which I admit is never supposed to enlighten usually. It's only supposed to influence cases and issues that couldn't be resolved in the legislative process. But the thing is that the law doesn't support this. And you can make up any kind of legal lawyer's argument you want about how this language could mean this and it could mean that, but we do have law here, and I would ask that you apply it. Thank you, Mr. Sullivans. Thank you, Mr. Joyner. We'll take the case under advisement. Thank you. Thank you. Thank you.  No, we got yours.